# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Carlos Maneul Sierra and Laura Lebrija,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Desert Palace, Inc. dba Caesars Palace; Jesus Montano; DOES I-IV and Roes I-V,<br><br>　　　　　　　　　　　Defendants. | Case No.: 2:12-cv-230-JAD-CWH<br><br>**Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment**<br>**[Doc. 53]** |

　　　　Caesars Palace hotel guests Carlos Manuel Sierra and Laura Lebrija were awakened abruptly by hotel staff who let themselves into their room on the purported belief that the couple had allowed the Jacuzzi tub in their room to overflow, causing water damage to the floors below. Sierra and Lebrija deny even using tub, claim that they sustained injuries in their unceremonious rousing, and sue Caesars and its housekeeping manager Jesus Montano on various tort and contract theories. Defendants move for summary judgment in the hotel's favor on all tort claims, and in Montano's favor on the punitive damages allegations, based on a "complete lack of evidence." Doc. 53 at 4. I find that the defendants have not met their summary-judgment burden on plaintiffs' emotional distress claims; even if they had, genuine issues of material fact preclude the entry of summary judgment on these claims. I conclude that plaintiffs have failed to identify evidence to support a negligence claim against Caesars, and I grant summary judgment on that claim. I strike the punitive damages prayer on the breach-of-contract claim but decline summary adjudication of the punitive damages allegations on any remaining claim. And I find that genuine issues of fact prevent summary judgment on plaintiffs' intrusion claim.

**Background**[1]

On June 4, 2011, plaintiffs Sierra and Lebrija were staying in the Caesars Palace Hotel in Las Vegas, Nevada. Doc. 50 at 3. They allege that while they slept, "without prior notice, knocking or invitation," several Caesars employees—including housekeeping manager defendant Jesus Montano and two other Caesars employees—entered plaintiffs' hotel room, opened the curtains, stood at the foot of their bed, shouted at them, called them criminals, and threatened to have them arrested, jailed, and evicted for allegedly leaving the water on in the Jacuzzi tub in their room overnight. *Id.* at 3-4; Docs. 65-3; 65-4; 65-6 at 10. A call to the plaintiffs' casino host caused the alleged intruders to leave, but Montano later returned unannounced with another Caesars employee who "threatened to evict the Plaintiffs from their hotel room and insulted them profusely." Doc. 50 at 3-4.

In deposition testimony, plaintiffs deny even using the Jacuzzi tub, *see, e.g.,* Docs. 65-3 at 10; 65-4 at 1; 65-6 at 10, and they allege that in addition to the anxiety, shock, and humiliation of being ambushed in their hotel bedroom by employees who falsely accused them of damage to hotel property, Sierra injured his arm, and they both suffered "among other things, emotional distress, post traumatic stress disorder, dermatitis caused by stress, mental anguish, inability to sleep, irritabilty, anxiety, psychological injuries, and physical illnesses including bronchitis." Doc. 50 at 6. Plaintiffs plead claims for negligent and intentional infliction of emotional distress, breach of contract, negligence, and intrusion. *See id.* at 3-12. They pray for special, compensatory, general, and punitive damages, attorney's fees, and costs. *Id.* at 12-13.

**Discussion**

Defendants move for partial summary judgment on all tort claims and the punitive-damages allegations against Caesars and on the punitive damages allegations against Montano, arguing that plaintiffs lack the evidence necessary to support these claims and allegations. *Id.* Plaintiffs oppose the motion, responding that defendants' brief is too

---

[1] This description is intended only for general background and not as any finding of fact.

2

undeveloped to shift the burden to plaintiffs and, at the very least, the depositions of plaintiffs and key defense witnesses show that disputed issues of material fact remain. Doc. 65. I find this motion suitable for disposition without oral argument.[2]

**A.      Summary Judgment Standards**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[3] The burdens on summary judgment are key. A party seeking summary judgment bears the initial burden of informing the Court of those portions of the pleadings and discovery that demonstrate the absence of a genuine issue of material fact.[4]

Parties moving for summary judgment must satisfy Rule 56 of the Federal Rules of Civil Procedure. Subsection (c)(1) of that rule states, "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[5] When a defendant moves for summary judgment on a plaintiff's claims "on the ground that the nonmoving party has no evidence," he or she "must affirmatively show the absence of evidence in the record."[6] "This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence."[7] "If there is literally no evidence in the record, the

---

[2] Nev. L.R. 78-2.

[3] Fed. R. Civ. P. 56(a).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5] Fed. R. Civ. P. 56(c)(1).

[6] *Celotex*, 477 U.S. at 332 (internal citations omitted).

[7] *Id.*

moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record.  Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party."[8]  "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the Court need not consider whether the moving party has met its ultimate burden of persuasion."[9]

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."[10]  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.[11]  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."[12]  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[13]  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."[14]  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[15]

---

[8] *Id.*

[9] *Id.*

[10] *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

[11] *Nissan Fire*, 210 F.3d at 1102-03.

[12] *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

[13] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

[14] *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).

[15] *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

**B.  Movants' Statement of Disputed and Undisputed Material Facts Does Not Comply with LR 56-1.**

Defendants submit a "statement of facts material to this motion," as they are obligated to do under Nevada Local Rule 56-1. Doc. 53 at 4-5. They assert that their motion is based on a "complete lack of evidence to support essential elements of Plaintiffs' claims," but they do not cite any evidence to support this contention. *See id.* Later in the argument section of their brief, they reference deposition excerpts from four witnesses as support for the proposition that plaintiffs' evidence falls short of proving their invasion claim. Doc. 53 at 11. With respect to their request for summary judgment on the punitive damages allegations against Montano, defendants' statement of facts represents, "the facts in that regard are set forth in that section of these Points and Authorities." *Id*. at 5. But the punitive-damages argument cites no evidence whatsoever—just allegations from the complaint. *Id*. at 17-18. From those *allegations*, defendants baldly argue, "Plaintiffs' *evidence* against Montano, even if accepted as absolutely true, does not establish fraud, malice, or oppression." *Id*. at 18-19 (emphasis added).

The Ninth Circuit cautions that parties who do not provide pinpoint citations to evidence supporting assertions made in a statement of disputed or undisputed facts risk exclusion of that evidence because the court is not required to "paw over files without the assistance from the parties" in order to evaluate their contentions.[16] To properly present a motion for summary judgment, a movant must comply with this district's local rule 56-1, which specifies that:

> Motions for summary judgment and responses thereto shall include **a concise statement setting forth each fact material** to the disposition of the motion, which **the party claims is or is not genuinely in issue, citing the particular portions** of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.[17]

Plaintiffs characterize defendants' factual statement and the motion it supports as little

---

[16] *Orr v. Bank of America*, 285 F.3d 764, 774-75 (9th Cir. 2002).

[17] Nev. L.R. 56-1 (emphasis added).

5

more than "an attempt . . . to require the Plaintiffs to produce evidence supporting their claims simply by saying that the Plaintiffs have no evidence" without demonstrating the absence of a material fact. Doc. 65 at 11. Although I could deny the motion based on this procedural deficiency alone, in the interest of justice—and while cautioning counsel that future failures to comply with this district's local rules may not be so easily excused—I consider the motion on its merits.

**C. Defendants Have Not Demonstrated the Absence of Evidence to Support Plaintiffs' Emotional Distress Claims.**

To prove an intentional infliction of emotional distress, plaintiffs must demonstrate "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiffs having suffered severe or extreme emotional distress and (3) actual or proximate causation."[18] Defendants contend that there is no evidence that the conduct of Caesars employees was extreme or outrageous. Doc. 53 at 5. They offer several case citations and this argument:

> Plaintiffs' only evidence to support the claim that Caesars employees entered their room without notice or knocking, and yelled at them in an angry and insulting way, and threatened them with criminal charges and civil damages. CITES. Such conduct is not sufficiently extreme and outrageous to constitute IIED.

Doc. 53 at 6. It appears that counsel's intention was to complete the first sentence to make it no longer a sentence fragment and to insert "CITES" to the record, but the placeholder nature of this incomplete argument was overlooked during final edit. The net result is that defendants have failed to carry their burden to present to the court with evidentiary support for their argument that summary judgment on plaintiffs' IIED claim is warranted.

Even if defendants had made their intended edits before filing the motion, summary judgment would remain inappropriate due to the unsettled record on the IIED facts. The deposition excerpts provided by both parties show there is a dispute over what Caesars

---

[18] *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (quoting *Starr v. Rabello*, 625 P.2d 90, 92 (1981) (citation omitted)).

6

employees said or threatened in the hotel room, and whether a factfinder would consider this conduct to be extreme or outrageous. These factual issues prevent the court from summarily adjudicating the IIED claim.

The same is true with respect to plaintiffs' negligent infliction of emotional distress claim. Defendants argue that the "same" lack of "extreme or outrageous conduct or intent to cause severe emotional distress" prevents plaintiffs from proving their NIED claim. Doc. 53 at 7-8. But neither "extreme or outrageous conduct" nor "intent to cause severe emotional distress" is an element of an NIED claim.[19] Defendants' argument that plaintiffs' NIED claim fails for the same reasons that their IIED claim fails, therefore, is meritless, and it has utterly failed to shift the burden to the plaintiffs to come forward with evidence to support their NIED claim.[20]

### D. Disputed Issues of Material Fact Preclude Summary Judgment on Plaintiffs' Intrusion Claim.

Defendants argue that insufficient evidence exists to establish plaintiffs' claim for intrusion upon their seclusion. Doc. 53 at 10. Citing to depositions from several Caesars employees, defendants claim that "there is no evidence that anyone from Caesars entered Plaintiffs' room for anything other than the performance of their duties related to the overflowed tub." Doc. 53 at 11.

---

[19] *See, e.g., Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993) (quoting *State v. Eaton*, 710 P.2d 1370, 1379 (Nev. 1985), and noting that Nevada recognizes a claim for NIED "where a bystander suffers 'serious emotional distress which results in physical symptoms caused by apprehending the death or serious injury of a loved one due to the negligence of the defendant.'"); *Crippens v. Sav on Drug Stores*, 961 P.2d 761, 762 (Nev. 1998) (listing the elements of NIED as: plaintiff (1) is a bystander closely related to the victim of an accident, (2) is located near the scene of the accident, and (3) suffers a shock resulting from direct emotional impact stemming from the sensory and contemporaneous observance of the accident.).

[20] In their reply brief, defendants first suggest that an NIED plaintiff must demonstrate they suffered a physical injury or illness. Doc. 68 at 6. Defendants then argue that "the only evidence Plaintiffs offer to support their claims" of PTSD, dermatitis caused by stress, mental anguish, inability to sleep, irritability, [and] anxiety" is Plaintiffs' own deposition testimony. Defendants then baldly claim that plaintiffs are not competent to offer such evidence. Defendants' decision to wait until the reply to raise this argument permits me to disregard it completely. *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007) (district court has discretion to ignore new arguments raised in reply brief). But even if I were to consider this late-raised argument on its merits, it still fails because a lay witness is competent to offer testimony about his own physical condition. *See Leiper v. Margolis*, 899 P.2d 574, 575 (Nev. 1995) ("While a lay witness may not give expert testimony as to the character or extent of her injury, she may testify as to her own health or physical condition.").

7

"To recover for the tort of intrusion, a plaintiff must prove the following elements: 1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person."[21] Defendants' argument focuses exclusively on the third, highly-offensive-to-a-reasonable-person prong. Citing persuasive authority, they claim that "there is no intrusion upon privacy where the area of solitude or seclusion is entered by persons whose purpose is to perform tasks related to their occupation." Doc. 53 at 10.[22] Defendants argue that, of the Caesars employees who entered plaintiffs' room, Montano and Alana Morse were housekeeping managers originally instructed to enter plaintiffs' hotel room to investigate the Jacuzzi, Docs. 53 at 24-25, 37; Dustin Sanders was a guest services manager whose duties included dealing with service failures due to the water leak, *Id.* at 44-45; and Ricardo Taddeo was the engineer who responded to the call, entered the room, shut off the running water, and drained the Jacuzzi. *Id.* at 51-54.

"The question of what kinds of conduct will be regarded as a 'highly offensive' intrusion is largely a matter of social conventions and expectations."[23] "A court considering whether a particular action is 'highly offensive' should consider the following factors: the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."[24] "Some examples of places that a person

---

[21] *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1279 (Nev. 1995), *overruled on other grounds*, 940 P.2d 134 (Nev. 1997); *see Conboy v. Wynn Las Vegas, LLC*, 2012 WL 5511616, at *9 (D. Nev. Nov. 14, 2012).

[22] In so doing, defendants cite to a trial court case from the Eastern District of Pennsylvania, *Barclay v. Keystone Shipping Co.*, 128 F. Supp. 2d 237, 246 (E.D. Pa. 2001). Plaintiffs correctly note that the Nevada Supreme Court has never adopted the rule outlined in *Barclay* that a defendant is categorically immunized from liability for an intrusion tort by virtue of his or her employment status. I decline to consider the same.

[23] *People for the Ethical Treatment of Animals*, 895 P.2d at 1281 (quotation omitted).

[24] *Id.* at 1282 (quotation omitted); *see also Kuhn v. Account Control Technology, Inc.*, 865 F. Supp. 1443, 1449 (D. Nev. 1994).

8

might traditionally have a reasonable expectation of privacy include a private bedroom."[25] Where plaintiffs have advance notice that strangers might intrude into their dwelling, such as after a homeowner defaults on his mortgage obligations, courts have found that such an intrusion, without more, does not make out an invasion of privacy cause of action.[26]  But when the contact was not entirely anticipated, courts have found the manner of the intrusion probative of whether liability for the intrusion could occur.[27]

Whether the entry of Caesars employees into plaintiffs' hotel room—even if made in search of a water leak—was reasonable is not a question I can answer as a matter of law. Morse testified that Caesars employees knocked on plaintiffs' door prior to entry, but she admits that in a subsequently completed incident report, there is no mention of having knocked on the door beforehand.  Doc. 68-2 at 5-6.  More importantly, the manner of the employees' conduct once inside plaintiffs' room is still subject to debate.  Montano testified that care was taken to wake up plaintiffs, who were in a deep sleep, after which Sierra "jumped off the bed" and aggressively confronted the employees in the room; he called security only after Sierra began cursing at him.  Doc. 68-1 at 5-10.  Sierra, on the other hand, testified, "I opened my eyes and I saw three individuals that I had no idea who they were. They could have been . . . thieves for what I knew.  Screaming, yelling, saying that we are going to go to jail, that we had . . . been sued, that we had damages many floors of the building for having left the Jacuzzi on the entire night."  Doc. 65-3 at 9.  Similarly, Lebrija testified that after Caesars employees woke her up, they told her they would be suing the couple for water damage, and that plaintiffs would be taken to jail.  Doc. 65-5 at 10.

The manner of the intrusion into plaintiffs' hotel room—material to resolution of whether the hotel room entry was "highly offensive"—is plainly an issue over which reasonable fact-finders could disagree.  Because a genuine issue of material fact remains,

---

[25] *Quinn v. Thomas*, 2010 WL 3036828, at *3 (D. Nev. July 28, 2010).

[26] *See Bonner v. Specialized Loan Servicing LLC*, 2011 WL 1199998, at *7 (D. Nev. Mar. 28, 2011).

[27] *See Kuhn v. Account Control Technology, Inc.*, 865 F. Supp. 1443, 1449 (D. Nev. 1994).

9

defendants' motion for summary judgment on this claim must be denied.

**E.    Summary Judgment Is Warranted on Plaintiffs' Negligence Claim Against Caesars.**

Defendants make a compelling summary-judgment argument on plaintiffs' negligence claim, however: they contend that the law imposes no duty that is implicated by the allegations in this case and, even if there is such a duty, there is no evidence of a breach. Doc. 53 at 8-9. They claim that plaintiffs have essentially turned the obligation to avoid intentional and negligent infliction of emotional distress into duties for purposes of this negligence claim. Plaintiffs respond by noting that Nevada recognizes a "special relationship between a property owner and an invitee" to exercise "ordinary care" and "protect[] the invitee against assaults from third parties." Doc. 65-1 at 6.

Plaintiffs are half right. "In an innkeeper negligence action, a plaintiff must establish the four basic elements of negligence:'(1) duty, (2) breach, (3) proximate causation, and (4) damages."[28] An innkeeper's "duty to prevent wrongful conduct by third parties "to protect patrons from foreseeable wrongful acts.'"[29] Thus, to survive summary judgment on a negligence claim against a hotel in Nevada, a plaintiff must "establish that the wrongful act was foreseeable."[30]

Plaintiffs have not merely failed to establish that the conduct in their hotel room that morning was foreseeable, they ignore the requirement altogether. They don't even mention foreseeability, let alone offer evidence (or even allegations) to support the notion that Caesars reasonably foresaw the conduct that precipitated this case. *See* Doc. 65-1 at 5-7. Because plaintiffs have not identified evidence in the record suggesting foreseeability, Caesars is entitled to summary judgment on plaintiffs' negligence claim against the hotel.

---

[28] *Smith v. Coast Hotels and Casinos,* Inc., 2014 WL 3764810, at *2 (Nev. July 29, 2014) (unpublished disposition) (quoting *Estate of Smith v. Mahoney's Silver Nugget, Inc*., 265 P.3d 688, 690 (Nev. 2011).

[29] *Id*. (citing NRS 651.015(2)).

[30] *Id*.

**F.     Plaintiffs Cannot Seek Punitive Damages for Breach of Contract, but Defendants Have Not Demonstrated that Summary Adjudication of the Punitive Damages Prayer is Warranted on their Other Claims.**

Plaintiffs pray for punitive damages in connection with each of their claims. *See* Doc. 50. Defendants seek summary judgment on the punitive damages "claim,"[31] arguing that the evidence of the hotel's vicarious liability for punitive damages is absent and that Plaintiffs' "self-serving version of the events," even if accepted as absolutely true, does not establish fraud, malice, or oppression" necessary to award punitive damages against Montano. Doc. 53 at 12-19. Although I strike the punitive damages allegations in plaintiffs' breach of contract claim, I find that genuine issues of material fact preclude summary adjudication of the remaining punitive-damages allegations.

*1.     Punitive damages are not available for breach of contract.*

Paragraph 33 of plaintiffs' third amended complaint alleges that defendants' breach of contract "was in such wanton and total disregard of the obligations they owed to the Plaintiffs and constituted such a gross, reckless, oppressive, fraudulent, willful, malicious and/or outrageous disregard for the consequences of their actions and/or omissions . . . to justify an assessment of exemplary and punitive damages. . . ." Doc. 50 at 8. In Nevada, punitive damages are available only for torts involving oppression, fraud, or malice.[32] Punitive damages are not recoverable for breach of contract.[33] Plaintiffs' prayer for punitive damages in conjunction with this contract claim is not authorized by Nevada law and will be stricken.

*2.     The remaining punitive damages allegations against Caesars*

Caesars notes that its liability for plaintiffs' claims is premised on the acts of its employees. Punitive damages against a corporate entity that acts in an employment capacity are governed by NRS 42.007(1), which provides that in:

---

[31] Punitive damages are a remedy, not a claim. *See, e.g., Grosjean v. Imperial Palace, Inc.*, 212 P.3d 1068, 1082 (Nev. 2009).

[32] NRS 42.005.

[33] *S.J. Amoroso Const. Co. v. Lazovich & Lazovich*, 810 P.2d 775, 777 (Nev. 1991).

11

> an action for the breach of an obligation in which exemplary or punitive damages are sought pursuant to subsection 1 of NRS 42.005 from an employer for the wrongful act of his or her employee, the employer is not liable for the exemplary or punitive damages unless:
>
> (a) The employer had advance knowledge that the employee was unfit for the purposes of the employment and employed the employee with a conscious disregard of the rights or safety of others;
>
> (b) The employer expressly authorized or ratified the wrongful act of the employee for which the damages are awarded; or
>
> (c) The employer is personally guilty of oppression, fraud or malice, express or implied.
>
> If the employer is a corporation, the employer is not liable for exemplary or punitive damages unless the elements of paragraph (a), (b) or (c) are met by an officer, director or managing agent of the corporation who was expressly authorized to direct or ratify the employee's conduct on behalf of the corporation.

Caesars contends that plaintiffs have not alleged that any officer, director, or managing agent ratified the employees' conduct. Doc. 53 at 14. They focus on the plaintiffs' failure to plead such facts and offer the off-hand, conclusory comment, "[i]n any event, Plaintiffs have no such evidence." *Id*. at 15. In response, plaintiffs come forth with evidence that demonstrates the existence of genuine issues of material fact as to Caesars' punitive-damages liability under NRS 42.007(1).

       *a.*  *Ratification*

Plaintiffs first argue that the evidence demonstrates that Caesars ratified its employees' conduct, rendering the company liable for punitive damages under NRS 42.007(1)(b). They point to testimony that demonstrates that Montano and Sanders both reported the hotel room altercation to Caesars President Gary Selesner, who did not order an investigation, even though he did overrule Sanders's recommendation that plaintiffs be evicted from the hotel. Docs. 65-2 at 4-5; 65-8 at 8-9; 65-10 at 7-8. Plaintiffs also note that the evidence indicates that Maya Lukic, Caesars Guest Services Manager and "managing agent" for Caesars, was informed of the events, promised to conduct an investigation, but failed to follow through. Doc. 65-2 at 6 (citing deposition testimony). This evidence reveals disputed issues that prevent summary adjudication of the remaining punitive-

damages allegations including whether an investigation into the incident was ever performed, or whether, if performed, Caesars management ratified it by failing to discipline the employees in question. Caesars Guest Services Manager Dustin Sanders testified that he was unaware of any investigation, although he admitted that President Selesner was informed of Sanders's request to evict plaintiffs from the hotel, and Selesner denied that request. Doc. 65-8 at 6-9. Montano also testified that President Selesner received notification of the incident. Doc. 65-10 at 7-8. However, neither deponent testified that President Selesner—with full knowledge of these events—took any disciplinary action against the employees who entered plaintiffs' room. Defendants do not seriously deny that Selesner's role as President gave him ratification authority on behalf of Caesars. When these facts are construed in the light most favorable to plaintiffs, it can be inferred that Selesner, on behalf of Caesars, ratified his employees' actions. Defendants respond to the pinpoint citations to this evidence by simply referring the court back to their motion—a poor tactic in the face of record citations to deposition testimony. Genuine issues of material fact preclude summary judgment on these remaining punitive-damages allegations.

                          b.       *Managerial capacity*

Even assuming that no Caesars management figure ratified the conduct giving rise to this suit, it is an open question whether Montano or Sanders themselves acted in a managerial capacity such that Caesars's liability under NRS 42.007(1)(c) can be inferred. Defendants argue that Montano's deposition indicates that he was a low-level employee who simply responded to complaints of an overflowing tub and did not act in a managerial capacity. Doc. 53 at 17. Similarly, they argue that the testimony of Sanders, a guest services director, undermines any conclusion that he is a managing agent under Nevada law. *Id*. In response, plaintiffs argue that Montano and Sanders were "Managing Agents" for Caesars such that the company acted directly through them. Doc. 65-2 at 7.

As the Nevada Supreme Court expressed in *Countrywide Home Loans, Inc. v. Thichener*, "Although NRS 42.007 fails to define a managing agent, [the Court has] previously . . . recognized that determining an individual's managerial capacity depends on

'what the individual is authorized to do by the principal and whether the agent has the discretion as to what is done and how it is done.'"[34] Sanders testified that as a guest services manager his duties were "[p]rimarily to assist guests either with service failure issues or beyond site for hotel guest physical or any other emergencies." Doc. 65-8 at 5. Sanders was also apparently authorized to recommend eviction of a guest, as he requested the same from Selesner. *Id.* at 6-7. The authority to recommend eviction of a guest based on appraisal of an altercation leaves a genuine issue whether Sanders acted in a managerial role on the night in question. Similarly, Montano, as a housekeeping manager, was responsible for overseeing housekeeping staff and inspecting the premises in emergency situations, such as flooding; he apparently had discretion in how to gain entry into hotel rooms. *See* Doc. 65-9 at 7-8, 26. In sum, based on the disputed evidentiary record, I cannot conclude, as a matter of law, that Sanders and Montano were not Caesars "managing agents" when they performed the alleged acts on which this case is brought.

### 3.     *Montano*

Finally, defendants contend that the evidence is insufficient to assess punitive damages against Montano because the "evidence," even if accepted as true, is wholly self-serving and cannot constitute the basis for determining a disputed issue of material fact. Doc. 53 at 17-18. Defendants are content to claim that "Plaintiffs' version of events has varied during discovery, but can be summarized by reference to their Third Amended Complaint." Doc. 53 at 17.

Whatever this "evidence" may be, defendants have failed to cite to any admissible portion of it, and the complaint is simply not competent summary judgment evidence. Even if I were to presume that defendants mean to gesture to the deposition transcripts, these transcripts reveal a material conflict in the evidence that is properly resolved by the trier of fact: whether Montano acted with the intent to injure the plaintiffs or engaged in "despicable

---

[34] *Countrywide Home Loans, Inc. v. Thichener*, 192 P.3d 243, 258 (Nev. 2008) (quoting *Smith's Food & Drug Centers, Inc. v. Bellegarde*, 958 P.2d 1208, 1214 (Nev. 1998)), *overruled on other grounds*, 192 P.3d 243.

conduct . . . with a conscious disregard of the rights or safety of others."[35]  Finally, defendants' argument that plaintiffs' testimony is "uncorroborated" is disingenuous: this dispute involves several individuals in the room, none of whom could be characterized as neutral, and even Caesars host Gabriella Coronado testified that Montano was "agitated" and she "told him to calm down" and "stop being rude" while he was in the middle of this incident.  Doc. 65-7 at 7-8.  Defendants' motion for summary judgment on the punitive damages allegations against Montano is denied.

## Conclusion

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment **[Doc. 53]** is **GRANTED in part and DENIED in part:**

Summary judgment is granted on plaintiffs' negligence claim against Caesars; plaintiffs' prayer for punitive damages in connection with their breach-of-contract claim is stricken; and the motion is denied in all other respects.

Dated: September 26, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE

---

[35] NRS 42.001(3) (defining malice).